# UNITED STATES DISTRICT COURT
for the
Eastern District of North Carolina


FILED
OCT 07 2025
PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY ___ DEP CLK

| | |
|---|---|
| United States of America<br>v.<br><br>**Christopher Lancaster**<br><br>*Defendant(s)* | )<br>)<br>) Case No. 7:25-mj-1292-RJ<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of October 4, 2025 to October 6, 2025 in the county of New Hanover in the
Eastern District of North Carolina, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18 U.S.C. 2261A(2) | Cyberstalking |

This criminal complaint is based on these facts:

See attached

☒ Continued on the attached sheet.

_____
Complainant's signature

Jack Kane, FBI Special Agent
Printed name and title

Attested to by the complainant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
__Jack Kane_____ *(specify reliable electronic means).*

Date: October 7 2025

_____
Judge's signature

City and state: Wilmington, NC

Robert B. Jones, Jr. United States Magistrate Judge
Printed name and title

a7

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

## AFFIDAVIT

I, **Jack F. Kane**, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION

1. I am a Special Agent with the Federal Bureau of Investigation assigned to the Wilmington, Resident Agency, of the Charlotte, North Carolina Field Office. I have been an FBI Special Agent for approximately 11 years. Prior to that, I was an Intelligence Officer in the United States Marine Corps for approximately 5 years. I am an investigative and law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7). My duties as a Special Agent include the full-time investigation of a wide range of federal criminal offenses, including violations of federal and state criminal offenses. My responsibilities include overseeing the FBI Coastal Carolina Joint Terrorism Task Force, which focuses on the investigation of violent crime and other federal offenses in Eastern North Carolina.

2. This affidavit is submitted as evidence of probable cause supporting the arrest warrant for CHRISTOPHER LANCASTER (herein after referred to as LANCASTER), date of birth 9/27/1973, home address 604 Plum Nearly Lane Unit B, Wilmington, NC 28403, for Cyber Stalking in violation of Title 18 U.S.C. 2261A(2). This affidavit is intended to merely show that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## JURISDICTION

3. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), &

(c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

1. On October 6, 2025, I received information from the United States Probation Office in Wilmington, NC and the Veterans Affairs Clinic in Wilmington, NC that LANCASTER made recent threats to employees at both locations telephonically from his cellular phone and that the victims of these threats were in fear of death, serious bodily harm and caused substantial emotional distress to these individuals and organizations.

2. On October 6, 2025, I spoke with a U.S. Probation Officer (hereafter PO1) that has dealt with LANCASTER for multiple years, as he and others have supervised LANCASTER in their official work capacities while LANCASTER was on federal supervised release. LANCASTER was released from federal supervision in May of 2025, and LANCASTER has not been under supervision by PO1 or any other U.S. Probation Officers since May. In the recent weeks, LANCASTER has made numerous phone calls to PO1's government issued cellular phone and left him numerous harassing and threatening voicemail messages. LANCASTER has significantly increased the volume of phone calls and harassing messages in the recent weeks by calling PO1 and leaving PO1 102 voicemails in a 48-hour period between October 4, 2025 at approximately 12:35 A.M. and October 6, 2025 at approximately 12:21 A.M. on PO1's government issued cellular phone.

3. A sampling and summary of some of the 102 the voicemail messages to PO1 by LANCASTER are as follows:

10/4/25 – LANCASTER threatens PO1 that PO1 will go to jail if PO1 doesn't call him back in the morning. LANCASTER also makes a comment about PO1's family and that LANCASTER knows where PO1's family lives. LANCASTER asks "how's your back doing and how's your dick". (Agent note: PO1 had a major back injury earlier this year and LANCASTER knows PO1 about this injury from when PO1 previously supervised LANCASTER)

10/4/25 – "fuck you bro, if you don't call me back in the morning I will have you arrested"; "You are fucked up in the head bro"; "Does your family know that you are doing this to me"; "Fuck you David"; "You will get punishment"

10/4/2025 – "You remember that little Smith and Wesson. That thing has been in my truck That thing is like 20 years old. Caroline touched it. Your DNA is on it."

10/4/2025 – "Allen is going to fuck you up too"; "All you motherfuckers are fucked up"; "If you don't call me in the fucking morning, you are going to jail"; "If you don't call me in the morning [unintelligible] when I wake up in the morning [unintelligible] rot in hell dude"; "Fuck that dude, you are going to hell"; "David, I can't use my god damn penis dickhead."

10/4/2025 – "David is this [unintelligible] or I guess am I harassing you. Is anyone on the phone going to give me a warrant for harassment. I'm sorry [laughter]. I'm just chilling."

10/5/2025 – "You are not going to fucking heaven"; "Rouser is involved you son of a bitch"; "Now look mother fucker [unintelligible]".

10/5/2025 – "Sir, if you wife hasn't left you yet, then she should"

4. I have reviewed approximately half of the 102 voicemail messages from LANCASTER on PO1's cellular phone. All of the messages I have reviewed have a very similar tone, theme, and rhetoric as those summarized in the previous paragraph.

5. LANCASTER also sent inappropriate and lewd messages to a co-worker of PO1, another U.S. Probation Officer(hereafter PO2), who also previously supervised LANCASTER while LANCASTER was on supervised release.

6. On September 26, 2025, LANCASTER sent PO2 numerous text messages to PO2's government issued cellular phone that contained numerous images of LANCASTER. Three of the images received by PO2 were "selfies" of LANCASTER that appeared to be taken by LANCASTER standing in front of a bathroom mirror with his shirt off, his underwear pulled down, and his genitals exposed. The images with LANCASTER's genitals on display all also contained LANCASTER's face in the image, and I recognize the person in the images to be LANCASTER based on my review of these pictures and other pictures I have obtained through open source and law enforcement databases. On this same date, LANCASTER called PO2's government issued cellular phone and left a voicemail. The voicemail is approximately two minutes in length. Below is a sampling of the message:

> *"Hey Officer (PO2), it's Chris Lancaster. Long time. I sent you some texts [unintelligible]. I'm right here where you left me. I'm about to shave my nuts. Look my stomach busted open"*

7. On October 6, 2025, PO1 advised that every phone call, text, and voicemail message received by PO1 and PO2 were sent from LANCASTER's cellular phone number 910-660-5645 and this the same phone number LANCASTER used while he was on supervised release earlier this year. PO2 also sent me a screenshot from his government issued cellular phone of his contact card for LANCASTER and it displayed this same phone number of 910-660-5645.

8. On October 6, 2025, I contacted the Veteran's Affairs Clinic in Wilmington, NC telephonically and spoke with multiple providers from the clinic that have recently encountered LANCASTER and victims of his threats and harassing messages. On July 30, 2025, LANCASTER made threatening and harassing statements to providers at the clinic resulting in criminal state charges and LANCASTER's arrest by the New Hanover County Sheriff's Office. LANCASTER is currently out on bond for these charges. Over the last few weeks, LANCASTER has continued to make phone calls to the clinic and make the same verbal threatening and harassing comments to the employees at the clinic. On one specific occasion, on September 25, 2025, VA Clinic RN Ashley Weeks attempted to follow up with LANCASTER telephonically regarding a medical visit earlier that same morning. LANCASTER proceeded to shout at her and stated that something will happen on October 7th and that "you will be on the news." This statement, coupled with all the previous threatening and harassing statements made by LANCASTER to Weeks and her staff, resulted in the clinical staff incredibly fearful for their safety and security. Weeks advised that

numerous staff members of the clinic were planning to call in sick or take the day off work on October 7th in fear for their lives and safety from LANCASTER's threats and comments.

9. On October 6, 2025, I called LANCASTER's cellular phone number 910-660-5645 from my work issued cellular phone. During this phone call, I did not reveal my true identity, I advised LANCASTER I worked for the government and was calling as a friendly reminder of his court hearing the next day (October 7, 2025). LANCASTER acknowledged that he was "Christopher LANCASTER" and advised he would not be going to the court hearing due to the many frustrations with an assortment of individuals involved in his ongoing state criminal charges. I also recognized LANCASTER's voice to be that of the same voice I heard in all the voicemail messages I have listened to and described throughout this affidavit.

10. On October 6, 2025, I conducted a database search for phone number 910-660-5645. The database checks revealed this phone number is owned and operated by MetroPCS Mobile. MetroPCS Mobile is a subsidiary of T-Mobile. T-Mobile is headquartered in Parsippany, NJ. Based on my training and experience, T-Mobile cellular records, to include voicemail messages and data, are retained at the T-Mobile headquarters location in New Jersey. I also obtained subscriber information for this same phone number. This information revealed the cellular phone used by LANCASTER is a Motorola XT2417-1 "moto g 5G – 2024". Based on my training and experience, I know that Motorola phones are primarily manufactured in China, particularly in the Guangdong Province, with secondary production in India and Brazil.

## CONCLUSION

11. Based on the information presented in this Affidavit, I, Jack F. Kane respectfully submit that there is probable cause to believe that CHRISTOPHER LANCASTER is in fact guilty

of Cyber Stalking in violation of Title 18 U.S.C. 2261A(2), and respectfully ask that the Court issue a warrant ordering his arrest for such crime.

_____
Jack F. Kane, Special Agent
Federal Bureau of Investigations

On this __Jack Kane_____, appeared before me via reliable electronic means, was placed under oath, and attested to the contents of this affidavit.

_____
Robert B. Jones, Jr.
United States Magistrate Judge

a 7